## LOWE v. STATE.    (No. 5797.)

(Court of Criminal Appeals of Texas.    June 9, 1920.    Rehearing Denied Jan. 5, 1921.)

1. Jury ⟲110(9)—Too late after verdict to complain of errors committed in organization of jury.

It is too late after verdict to complain of errors committed in the impaneling or organization of the jury.

2. Jury ⟲110(11)—No complaint can be made of accepted juror having an opinion.

If accused accepts a juror after learning that he has an opinion and refuses to challenge him for cause, he cannot afterward complain that the juror was not fair and impartial.

3. Jury ⟲110(1)—Grounds of challenge for cause that may be waived.

All grounds of challenge for cause may be waived, except that the proposed juror has been convicted of theft or felony, or that he is under indictment for theft or felony, or that he is insane or so physically defective as to render him unfit, under Vernon's Ann. Code Cr. Proc. 1916, art. 695.

4. Jury ⟲109—Court not required to discharge juror on own motion.

There is no duty on the court of his own motion to discharge a juror whose examination shows him subject to challenge for cause, under Vernon's Ann. Code Cr. Proc. 1916, art. 692, subd. 13, unless one of the parties sees fit to make such challenge, in view of articles 636, 695.

5. Criminal law ⟲918(10, 11)—No complaint of juror accepted by accused with knowledge of matter set up in motion for new trial.

Accused cannot complain on motion for new trial that the court did not discharge a juror, whose examination showed him subject to challenge for cause, where the juror was accepted by accused with full knowledge of the matter set up in the motion for new trial.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Criminal law ⬳673(3)—Impeaching testimony need not be limited in charge.**

Court did not err in failing to limit in his charge to the jury testimony offered by accused to impeach a state witness.

**7. Criminal law ⬳1036(3)—No complaint of failure to limit testimony in absence of exception and request for special charge.**

Failure of the court to limit in his main charge testimony offered by accused to impeach a state witness, if such a limitation were proper, was not error, where such main charge was not excepted to, and no special charge was asked presenting the issue.

**8. Criminal law ⬳855(8), 928—Communication with jurors improper, but to require new trial must relate to case.**

Communications with jurors, except within statutory limitation, are improper, and should not be permitted, but to constitute error justifying new trial they must relate to the case and injury must follow, under Vernon's Code Cr. Proc. 1916, art. 692, subd. 7.

**9. Criminal law ⬳1120(4)—Bill of exceptions must set out question complained of.**

Complaint that accused was compelled to answer questions on certain subject cannot be considered on appeal, where the questions are not set out in the bill of exceptions.

**10. Criminal law ⬳1120(4)—Bill complaining of question to accused held not to show error.**

A bill of exceptions, complaining that accused was required to answer the question, "I will ask you if it is not true that it was discussed in that conversation (having reference to a conversation inquired about by the state) that you had been gambling and had repeatedly given checks and turned them down, and when that was found out you got mad at them too," did not show error, where it did not state what answer accused made, nor presented the connection or setting of the question.

**11. Criminal law ⬳1091(3) — Bill of exceptions must show that complaint concerning question asked by state was meritorious.**

A bill of exceptions, complaining of questions asked accused by the state, must contain such a showing as will enable the appellate court to see therefrom that the complaint is meritorious, and the answer of the witness must appear if complained of.

**12. Criminal law ⬳376, 673(2) — Testimony affecting character of accused admissible if otherwise admissible.**

An accused cannot complain that admission of testimony would affect the character of the accused if the evidence is otherwise admissible, but accused has the right to request a charge limiting the purpose for which same is admitted, if such be the probable or possible result of the testimony.

**13. Criminal law ⬳854(9) — No forbidden "separation" of jury shown.**

Where, while leaving courthouse at night, a juror went down a stairway by mistake, but immediately returned and rejoined the other jurors in response to prosecuting attorney's direction, there was no misconduct of the jury nor such forbidden separation as is embraced by Vernon's Ann. Code Cr. Proc. 1916, art. 745.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Separation.]

**14. Witnesses ⬳379(9) — Witness may be asked as to testimony before grand jury as affecting credibility.**

A witness may be asked as affecting his credibility whether at other times and places, in narrating the occurrences testified about, he gave testimony different from that now given, even though such other statements were made before the grand jury.

*On Motion for Rehearing.*

**15. Jury ⬳109—Statute held not to require court to act independently of challenge for cause.**

Vernon's Ann. Code Cr. Proc. 1916, art. 692, subd. 13, is not intended to require the trial court to act independently of a challenge of a juror for cause by either party, but to accurately prescribe the test which shall be legally sufficient to sustain such challenge when made.

**16. Criminal law ⬳417(2)—Court did not err in excluding statement of accused's wife.**

In a homicide case, rejection of statement of accused's wife concerning shooting was not error, where, so far as was disclosed, the wife was a bystander, not participating in the shooting, and it was not shown that the statement was made in the presence of appellant, nor how near same occurred in point of time to the shooting.

Appeal from District Court, Wilson County; Covey C. Thomas, Judge.

John W. Lowe was convicted of murder, and he appeals. Affirmed.

R. R. Smith, of Jourdanton, J. Ed. Canfield, of Floresville, Henry S. Paulus, of Yoakum, Fly & Ragsdale, of Victoria, and Dibrell & Mosheim, of Seguin, for appellant.

Alvin M. Owsley, Asst. Atty. Gen., for the State.

LATTIMORE, J. [1, 2] Appellant was convicted of the murder of one Tullos, in the district court of Wilson county, and his punishment fixed at confinement in the penitentiary for life. The case originated in Atascosa county, and was sent to Wilson county upon change of venue. It is urged that the trial court should have discharged Juror Darelik of the court's own motion, and that his failure to do so was error. From the record, it appears that when the work of impaneling the jury was begun, this was the first juror to be examined, and that he stated in substance that from reading the papers and hearing talk upon the streets he had come to a conclusion about the case that

would influence his verdict. He does not appear to have been asked and answered the question as to whether he could try the case under the law and evidence, and lay aside such opinion. The understanding of the English language by said juror, and of legal terms, was not made clear by the examination given him. After the juror stated to the court that he had an opinion which he thought would influence his verdict, the judge asked appellant's counsel if they desired to challenge the juror for cause, stating that if they did so desire, he would sustain their challenge. Appellant's attorney declined to challenge said juror for cause, and when the state accepted him appellant also accepted him, and he was duly sworn, and sat as a juror. No bill of exceptions was taken or reserved then by appellant to the taking of said juror. That the juror was objectionable was first disclosed in appellant's motion for a new trial. A bill of exceptions was taken to the court's refusal to grant a new trial upon this ground. In his explanation affixed to said bill, the trial court states that appellant declined to challenge the juror for cause, and further, that appellant did not use a peremptory challenge upon him, and the jury was obtained before appellant had exhausted his peremptory challenges. We might content ourselves with saying that it is too late after the verdict to complain of errors committed in the impaneling or organization of the jury. Jones v. State, 37 Tex. Cr. R. 433, 35 S. W. 975; Moore v. State, 55 Tex. Cr. R. 3, 114 S. W. 807; Ellington v. State, 63 Tex. Cr. R. 427, 140 S. W. 1101; Kinch v. State, 70 Tex. Cr. R. 419, 156 S. W. 649. As said by Judge Hurt in Caldwell v. State, 12 Tex. App. 316:

"Will this court reverse a judgment for these irregularities, when the defendant made no objection at the time, taking his chance of being acquitted by this jury thus sworn, and holding in reserve this matter to be used in his motion for new trial, and, on failure then, to be used in this court as ground for reversal of the judgment? We think not."

As said by Judge Davidson, in the Kinch Case, supra:

"Appellant went to trial without objection, accepted the jury, reserving no exception. There was no challenge to the array; nor was there an exception reserved to any juror who sat upon the trial. * * * If appellant had objected to these jurors, or to the array before the selection of the jury, his case would have presented a very different proposition. We therefore hold that, even had the matter been presented by bill of exception, we could not reverse, inasmuch as appellant accepted the jury without objection and only suggests it, after trial, in the agreed statement in the statement of facts."

If the defendant accepts a juror after learning that he has an opinion, he cannot afterward complain that the juror was not fair and impartial. Kirk v. State, 37 S. W. 440; Aud et al. v. State, 36 Tex. Cr. R. 76, 35 S. W. 671; Armstrong v. State, 34 Tex. Cr. R. 248, 30 S. W. 235; Hughes v. State, 60 S. W. 565; Tinker v. State, 58 Tex. Cr. R. 321, 125 S. W. 890; Powers v. State, 69 Tex. Cr. R. 494, 154 S. W. 1020.

[3] All other grounds of challenge for cause may be waived, except that the proposed juror has been convicted of theft or felony, or that he is under indictment for theft or felony; that he is insane, or so physically defective as to render him unfit. Article 692, Vernon's C. C. P.; Greer v. State, 14 Tex. App. 179; Poole v. State, 45 Tex. Cr. R. 361, 76 S. W. 565.

[4] Appellant cites authorities in support of his contention, but an examination of each of them discloses that in none does there appear a state of case at all similar to the one before us. In the Stagner Case, 9 Tex. App. 450, appellant exhausted all his peremptory challenges, and was forced to take as jurors certain persons who had opinions which they stated would require evidence to change, to each of whom he made challenge for cause, which was overruled. All the expressions used by the court in the Stagner Case are based on and must be construed in the light of these facts; nor are they to be construed as imposing any duty on the court of his own motion to discharge a juror whose examination shows him subject to challenge for cause, under subdivision 13, art. 692, C. C. P., unless one of the parties sees fit to make such challenge. For us to hold otherwise would be for us to constitute of ourselves the lawmaking body, and to add to and change the terms of article 695, wherein it is stated that no juror shall be impaneled when it appears that he is subject to either the third, fourth, or fifth cause of challenge laid in article 636, although both parties may consent. It would be for us to so change this article as to make it also include the thirteenth cause for challenge. We do not understand this to be our province. Specific statutory mention of these three grounds excludes those not so named.

[5] The Spear Case, 16 Tex. App. 113, is also cited, but in that case a challenge for cause was sustained, and all in that opinion which is authoritative relates to the correctness of the ruling of the trial court in upholding a challenge for cause. The Steagald Case, 22 Tex. App. 488, 3 S. W. 771, also cited, is against appellant's contention. The court there upheld the action of the trial court in overruling the appellant's challenge for cause to a juror, and aptly said:

"Moreover, it is not shown * * * that defendant had exhausted his peremptory challenges, and unless that is shown he has no right to complain. Loggins v. State, 12 Tex. Ct. App. 65; Bean v. State, 17 Tex. Ct. App. 60; Heskew v. State, 17 Tex. Ct. App. 161."

In the Suit Case, 30 Tex. App. 323, 17 S. W. 458, also cited, this court held the action of the trial court correct in overruling the challenge for cause. In the Randle Case, also cited, 34 Tex. Cr. R. 43, 28 S. W. 953, the only question before the court remotely related was the question of a change of venue, and the discussion of said question, as relating to the one before us, is merely argumentative. In the Parker Case, 45 Tex. Cr. R. 336, 77 S. W. 783, also cited, the question involved was the correctness of the action of the trial court in overruling a challenge for cause. No case is cited, nor do we know of any, in which, on a state of facts similar to the one before us, it is held to be the duty of the trial court to grant a new trial where a juror was accepted by the accused, with full knowledge of the matter set up in the motion for new trial.

[6, 7] Complaint was also made in appellant's motion for new trial that the court failed to limit in his charge to the jury the testimony offered by appellant to impeach one Will Rainey, who was a state witness. We do not understand the rule to be that such testimony should be limited. Givens v. State, 35 Tex. Cr. R. 564, 34 S. W. 626; Ogle v. State, 58 S. W. 1004; Thompson v. State, 55 Tex. Cr. R. 120, 113 S. W. 536; Ellis v. State, 69 Tex. Cr. R. 468, 154 S. W. 1012. If such limitation were proper, the failure of the court to so state in his main charge was not excepted to, nor was any special charge asked presenting the issue, and in such case no error would appear. Article 743, Vernon's C. C. P.: Bedford v. State, 75 Tex. Cr. R. 309, 170 S. W. 727; Hawkins v. State, 74 Tex. Cr. R. 452, 168 S. W. 93; Burge v. State, 73 Tex. Cr. R. 505, 167 S. W. 63; Roberts v. State, 74 Tex. Cr. R. 150, 168 S. W. 100; Johns v. State, 76 Tex. Cr. R. 303, 174 S. W. 610.

The only case cited by appellant, supporting his contention in this regard, is Bell v. State, 17 Tex. App. 538. We observe that the law requiring exceptions taken to the charge, or special charges requested, has been changed since the rendition of this decision.

[8] Misconduct of the jury is set up in the motion for new trial. Aside from the general matters averred, it is stated that two jurors were communicated with while on the jury by persons interested in securing a conviction, and that the communications were injurious to appellant. The jurors named were Myers and Clark. Subdivision 7 of article 837, Vernon's C. C. P., states that a new trial shall be granted when the jury, after retirement, have received other testimony, or where a juror has conversed with any person in regard to the case, etc. Our authorities hold that it must appear that there was a communication, that it related to the case, and that no injury could or did follow. See authorities collated, page 791,

Vernon's C. C. P.; section 598, Branch's Ann. Penal Code. Upon the hearing of the facts as to this misconduct when the motion for new trial was presented, it was testified by Spencer McKenzie that as the jury were passing him at one time he remarked to Juror Myers, "Why don't you fellows get a shave?" and that either at that time, or on another occasion, he said to Juror Clark, "Are you coming out to the lodge to-night?" Juror Myers testified that he heard McKenzie's remark, but Juror Clark testified that he did not. This comprehends the matter. Neither remark referred to the case. Nothing appears which indicates error or abuse of the trial court's discretion in overruling this part of the motion for new trial. Communications with the jury, except within statutory limitation, are improper, and should not be permitted, but to constitute error, they must be brought within some forbiddance of the statute.

[9-11] Appellant's bill of exceptions No. 5 states that he objected to the state asking, and to his being required to answer while a witness, the following question:

"I will ask you if it is not true that it was discussed in that conversation [having reference to a conversation inquired about by the state] that you had been gambling and had repeatedly given checks and turned them down, and when that was found out, you got mad at them too."

It is stated as a part of said bill that appellant was also compelled to answer other questions on the same subject, but the latter questions are not set out, and cannot, therefore be considered by us. What answer, if any, appellant made to the foregoing question, is not stated, nor is there presented the connection or setting of said question, so that we may be informed and know that the objection is sound. If we understand the record, the state's theory of motive for the killing was ill feeling on the part of appellant toward one or both of the men killed by him, caused by certain gambling transactions and gambling debts owed by appellant. To support such theory, it might easily become material to show that appellant had been gambling, had given checks, and had them turned down, and in conversations relative thereto had gotten "mad at them too." It is well settled that a bill must contain such showing as will enable us to see therefrom that the complaint is meritorious; also that the answer of the witness if complained of must appear. Vernon's C. C. P. pp. 537, 538; Lawson v. State, 50 S. W. 346; Ryan v. State, 64 Tex. Cr. R. 628, 142 S. W. 878; Chapman v. State, 37 Tex. Cr. R. 173, 39 S. W. 113; Ford v. State, 40 Tex. Cr. R. 283, 50 S. W. 350; Branch's Ann. Penal Code, §§ 208-210.

[12] That an effect of such testimony would be to affect the character of the accused is not sufficient objection if the evidence be otherwise admissible. In such case, if

such be the probable or possible result of such testimony, appellant has the right to request a charge limiting the purpose for which same was admitted, but none was asked in the instant case.

[13] It is also urged that there was a separation of the jury, and that this was erroneous. It was shown that after the jury were selected and sworn, and before arraignment, while leaving the courthouse at night, the juror Cox, understanding that the jury were directed to go down a certain stairway, went down same. Other men were also going down said stairway; whom he supposed to be jurors, but when he got to the foot of the stairs he discovered that the other jurors were not with him. He asked a nearby man, who turned out to be the district attorney, where the jury was, and at once returned to the head of the stairs and rejoined them. No discussion or reference was made of the case. This was all that occurred, as shown by the testimony. This was no misconduct of the jury, nor was it such forbidden separation as is embraced in the terms of article 745, Vernon's C. C. P. Latham v. State, 75 Tex. Cr. R. 575, 172 S. W. 797; Guerrero v. State, 75 Tex. Cr. R. 558, 171 S. W. 731; Webb v. State, 69 Tex. Cr. R. 413, 154 S. W. 1013; Robinson v. State, 58 Tex. Cr. R. 550, 126 S. W. 276; Champ v. State, 32 Tex. Cr. R. 87, 22 S. W. 678; Jones v. State, 69 Tex. Cr. R. 447, 153 S. W. 897; Bailey v. State, 26 Tex. App. 706, 9 S. W. 270.

[14] Appellant's witness Burkett was asked, over objection, if it was not true that when before the grand jury testifying in regard to this transaction he failed to mention certain matters now given in testimony by him. The answer of the witness is not given in the bill of exceptions, but from certain statements therein we are led to believe that he stated that such question was not asked him when before the grand jury. A witness may be asked, as affecting his credibility, whether at other times and places, in narrating the occurrence testified about, he gave testimony different from that now given. Nor would the fact that the attempted predicate was as to statements made before the grand jury affect the admissibility of such question and its answer. A witness may be impeached by statements made, or omissions, relative to his testimony, before a grand jury. Vernon's C. C. P. p. 183, and cases cited; Clanton v. State, 13 Tex. App. 153; Rippey v. State, 29 Tex. App. 43, 14 S. W. 448; section 177, Branch's Ann. Penal Code.

It is claimed by appellant that he was absent from the courtroom while the trial was in progress. The maker of the affidavit relative to this matter, appended to the motion for new trial, testified before the trial court upon the hearing of the motion for new trial, and his testimony fails to show that appellant so absented himself.

The bill of exceptions, objecting to the testimony of the witness Despain, and certain parts of the testimony of appellant, has already been substantially disposed of in what we have said in reference to the bill relating to questions asked appellant concerning gambling transactions and debts. This bill of exceptions is very general, and does not set out the questions objected to and their answers, but merely states generally that the court erred in allowing the state to prove by these witnesses that appellant gambled in July or August, and had so done for several years. For aught we know of the connection or circumstances, or are informed by the bill of exceptions, these matters may have been pertinent and material.

Appellant also has a bill of exceptions to the rejection of the testimony of his son, as to a statement made by appellant's wife, the mother of said witness, subsequent to the shooting. The trial court qualified this bill by saying that it was not shown how near in point of time the statement was to the time of the shooting, and, further, that in his opinion, the statement made was but the opinion of the lady. We think the conclusions of the trial court fully justified in both respects.

The matter complained of in appellant's bill of exceptions No. 11 has already been substantially disposed of in what has been said above, relative to the testimony about gambling transactions and debts of appellant.

Appellant seems to have had a fair trial. No exceptions appear to have been taken to the charge as given. A number of special instructions were asked by appellant, and all given save one, and no complaint is made before this court of the refusal of same. A jury was selected without exhausting the peremptory challenges of the appellant. We see no good that can come from an extensive statement of the facts of this tragedy. Appellant, with a Winchester rifle, shot and killed two unarmed men, upon the streets of the town of Jourdanton, Atascosa county, Tex. No claim is here made that the verdict was not fully supported by the testimony.

Finding no reversible error in the record, the judgment will be affirmed.

## On Motion for Rehearing.

In his motion for rehearing appellant urges error in the refusal of his motion for new trial upon several grounds, mainly because the trial court held that no error had been committed in allowing the juror Darelik to sit in the trial of the case, and also that there was no error shown in the separation of the jury.

Deference to the forcible argument of appellant's counsel and a desire to be right in

conclusion has led us to examine many authorities and make careful study of these questions. We have been unable to find a single authority which holds that if a juror, competent under the statute, but subject to challenge for cause, sits as a member of the jury with the consent of the accused, this is such error as requires reversal. The contrary doctine seems to be held by all courts and laid down by the law-writers. Lord Tenterden in Rex v. Sutton, 8 Barn. & C. 417, says that he is not aware that a new trial had ever been granted on the ground that a juror was liable to be challenged if the party had an opportunity of making the challenge and did not exercise it. Mr. Bishop in his New Procedure (2d Ed.) § 932, says that one may waive objections to a juror, and while the jury is being made up, if he is aware of a cause for disqualification and does not make such challenge, it is too late afterward. Clark's Criminal Procedure, p. 451, says:

"If the defendant knew or could have known that a juror is disqualified for cause, and fails to object to him while the jury is being impaneled, he waives his objection and cannot afterward raise it."

Volume 12, page 436, Encyclopedia of Pleading and Practice states the rule to be that—

"The challenge for cause may be waived by neglect or omission to challenge when the opportunity is afforded, or by acceptance of the juror."

This authority (volume 12, p. 538) also says that it is undoubtedly the rule that challenge must be interposed when the jurors "come to book," and that after they have been sworn and charged with the case the right of challenge for existing cause is lost, and especially is such the case when the incompetency or disqualification was known to the complaining party. American & English Encyclopedia of Law, vol. 17, p. 1161, lays down the rule that an objection to a juror for incompetence is waived if not made before verdict; and, referring to the fact that all the courts are not in unison as to how far such objections may be made ground of a motion for new trial, this authority states:

"It is agreed that one who knew of a ground of disqualification before or during the trial cannot present such objection for the first time after verdict, and he must show the actual want of such knowledge on his part."

In Thompson on Trials, § 114, it is asserted that a known challenge for cause is waived by withholding same and raising it for the first time after verdict. In said section appears the following language:

"For counsel to sit in silence when the court is embarrassed in the process of impaneling a jury, declining to take action on suggestions of the court, and answering that they have nothing to say, and then raise the objection in case the verdict goes against them, is a trifling with the court and with the administration of justice, which is not to be tolerated on the trial of the gravest offenses."

So in People v. Scott, 56 Mich. 154, 22 N. W. 274, Judge Cooley, discussing the proposition that an objection to a juror, known during trial, comes too late when first raised after verdict, says:

"The notion that an accused party may at pleasure object to the want of qualification in a juror for the first time after verdict against him has no more basis in law or reason than a like claim would have if applied to the main issue on the trial. Every accused party is entitled by the Constitution to a trial on the merits; and if he declines to produce his evidence when his case is brought on, he may, on motion for new trial, alleged his inability to waive a constitutional right with quite as much plausibility as this respondent does in this case. The conclusive answer would be that the case is passed to judgment; and the judgment determines that rights have been observed, and is in fact the conclusion of the competent tribunal in respect to them. Upon all rights claimed in the political society there must be some authority vested with powers of final judgment, and there must be rules to determine when and how the rights shall be claimed. If a party in any case fails to make his right appear until judgment has passed against him, the judgment, if regular, leaves nothing open to inquiry afterwards."

Stewart v. State, 15 Ohio St. 155, exhibits a case wherein it was discovered during the trial that a juror was not competent. The trial court asked the accused what he had to say, and he objected to proceeding with the trial, but further stated that he waived none of his rights. The court discharged the jury. Upon another trial a plea of jeopardy was presented. The Supreme Court affirmed a conviction, and, speaking of what occurred during the first trial, said:

"Looking to the whole colloquy which took place between the court and counsel, it is quite evident that the defendant desired to be regarded as consenting to nothing, which might, in any respect, prejudice his possible rights in any stage of the trial, and that he desired to secure for himself, by objecting to proceeding with the trial, the full right and benefit, in the event of conviction, of a motion for a new trial on account of the fact then * * * disclosed, and at the same time, if possible, to obtain all the chances * * * from the jury then impaneled by refusing to consent to its discharge. He had a clear right to one fair and legal trial by an impartial jury, but his right to demand two trials as a prerequisite to a legal conviction and sentence cannot be conceded. * * * 'All general rules touching the administration of justice must be so understood as to be made consistent with the fundamental principles of justice.' The plaintiff in error has no right to complain because his own objection was not overruled. * * * The discharge of the jury was not without his consent"

—and did not operate as a bar to another prosecution. So in Young v. State, 90 Md. 579, 45 Atl. 531, the court, discussing an objection made to a juror for cause after trial had begun, said:

"The general practice that prevails here, and in most, if not all, of the courts having our system of jurisprudence, is that challenges for cause must be made before the juror is sworn; and that rule is, without exception, in all cases where the party objecting to the qualifications of the juror had knowledge at that time of the circumstances tending to disqualify, or could have known of them by the exercise of proper diligence, * * * if with such knowledge * * * he fails to make his challenge before the juror is sworn, it must be deemed to have been waived, no matter how good his cause of challenge may be."

In the instant case the appellant insists that, inasmuch as our Constitution guarantees a trial by an impartial jury, any statute giving him the right to waive a challenge for cause when such cause consists of a formed opinion would be in derogation of such constitutional provision, and therefore inoperative. We find that in most of the Constitutions of the states of the Union the same guaranty is given, and this is true of each of the states whose opinions follow. In Keener v. State, 18 Ga. 194, 63 Am. Dec. 269, wherein a juror stated that he had an opinion on the case, no challenge was made, and the juror served. In affirming the case the Supreme Court said this question as to the competence of the juror was not one they could be called on to decide, as there was no attempt to get rid of him in the trial court, but he had been accepted as he was without objection, and that the maxim applied that no one could take advantage of a wrong to which he had knowingly agreed. Many authorities were cited that an omission to challenge a juror for a known cause operates as a waiver, and it would be most unreasonable to allow a party the benefit of a verdict, if favorable, and of a new trial if the result be adverse. In Van Blaricun v. People, 16 Ill. 364, 63 Am. Dec. 316, a juror answered that he had an opinion about the case and the defense accepted him, but the trial court stood him aside of his own motion; and the case was reversed by the Supreme Court for such action. In Booby v. State, 4 Yerg. 111, the Supreme Court of Tennessee held in a case where it was set up in motion for new trial that a juror had bet on the outcome of the case, that such conduct was a gross immorality, and severely reprehensible, but declined to reverse the case because it was not shown that this matter was not known to the accused at the time of trial. The court said:

"The law will not permit him to lie by, take the chance of a verdict in his favor, and, if adverse, bring forward his exception, waived at the proper time for making it."

In Lisle v. State, 6 Mo. 426, the court said:

"The only other question for consideration is the propriety of refusing to grant a new trial in consequence of the alleged incompetency of one of the jurors. Whether this juror was incompetent or not I do not think it necessary in this case to determine. It has been suggested in argument that the section of our statute (Rev. Co. 490, § 11), which provides that a juror, who declares on his voir dire that he has formed and expressed an opinion, may nevertheless be sworn if that opinion be grounded merely on rumor, and is not such as could bias or prejudice his mind, is an evasion of the constitutional requisition, which declares that every offender shall have a fair and impartial jury. It is supposed that a juror who has formed an opinion, no matter from what sources of information, is not such an impartial juror as the Constitution contemplates. It may be said, however, in relation to this, that it might be a nice point in metaphysics to determine how far the mind was compelled to assent to or dissent from the truth of a supposed state of facts, when presented to its contemplation, and that for the ordinary purposes of life, we are well assured that an opinion or rather inclination of the judgment, founded on a supposed state of facts, when it is unaccompanied with any prejudice or ill will to the parties concerned, will very readily be removed and changed by the presentation of a different state of facts, and the person whose judgment is invoked is as capable of doing justice as though he had never heard any incorrect or imperfect statements in relation to the matter. However this may be, it is of no consequence for the decision of this case whether the juror was incompetent or not. If the juror was incompetent, and that incompetency was known to the defendant before the trial, he cannot now seek to reverse the judgment on that ground.

"This is not only consistent with justice, but amply sustained by the authorities, without, so far as I have been able to discover, a dissenting voice. 3 Marsh. 330; 1 Binney, 27. 4 Bibb, 272; 4 Littell, 118. The case of Bell v. Howard is directly in point. The court said, in relation to such an objection, 'It is apparent that when the juror was called on the trial, he disclosed the fact of his having made up an opinion before he was sworn. Bell should therefore have objected to the juror before he was sworn, and, having failed to do so, it was too late after trial, to make the incompetency of the juror a ground for a new trial. 4 Litt. 118.

"The consequences which would follow any other doctrine seem indeed too monstrous to be tolerated. I apprehend, on this point, there can be no difference in the rule in civil and criminal cases, and if in civil cases either party may receive incompetent jurors, and, after taking the chances of the opinion of the juror being in his favor, make it a ground for reversing the verdict, when it is discovered to be otherwise, there could be no end to litigation.

"It has been urged, however, that the answer of Morrow, the juror, to the double interrogatory propounded to him, being general, might have been applied by the defendant to either branch

of the question, and he might have been understood by defendant to have formed an opinion, but not to have expressed one. If the answer of the juror was equivocal, it was the duty of the defendant to have obtained a more satisfactory one, at the time. He had ample power for so doing, and in the event of a remaining dissatisfaction he had his peremptory challenges, by which the juror could have been disposed of. Our law, in tenderness to human life, has thrown most ample guards around the accused; it not only yields to every just requisition, but allows much even to the whims and caprices of the defendant, so that not only an impartial public may concur in the justice of his sentence, but even the prisoner himself may be satisfied that all his fancies have been consulted in the choice of his triers. Counsel are assigned him to enable him judiciously to use all these advantages. If, however, he will voluntarily waive these privileges, he cannot afterward complain of his own laches.

"Judgment affirmed."

So in the case of Givens v. State, 6 Tex. 343, our Supreme Court said that the alleged partiality of a juror did not entitle the defendant to a new trial. The court used the following language:

"The objection to the juror was known to the defendant before the trial; and it is well settled that when a party has accepted a juror, knowing the objection, he cannot, after verdict, make that objection ground for a new trial. * * * The law will not permit a party, by thus holding his objection to the juror in reserve, to take two chances of obtaining a verdict in his favor. If the defendant supposed the juror partial, and indisposed to give him a fair trial, he should have made his objection known before accepting him as a juror. Not having done so, he waived the objection."

So in Hanks v. State, 21 Tex. 526, complaint was first made in motion for new trial that a juror sat who had prejudged the case. Judge Roberts said:

"Every criminal has a constitutional right to be tried and punished, if guilty, by an impartial jury. * * * A loose expression of the juror, not indicative of a settled mind, would not avail the defendant, * * * nor would it avail the defendant had it not been shown by him in his affidavit that he was not apprised of the prejudice of the juror until after the trial."

It is obvious that to permit one to waive the challenge for cause, when the ground therefor is known by him to exist, when the jury is being selected, and to then allow him to raise the same objection at any other stage of the proceeding, would be tantamount to allowing him a second challenge for the same cause in the event he is convicted. In Baker v. State, 3 Tex. App. 525, it is held that in forming the jury each juror must be examined separately, and be subject to challenge for cause or peremptorily separately, and that these things must be done before the juror is impaneled, and that to challenge

afterward would not be allowed except for some cause not discoverable on the examination of such person. In Roberts v. State, 30 Tex. App. 291, 17 S. W. 450, Judge Davidson says:

"In so far as the juror Scollard is concerned, it is sufficient to say that defendant accepted him and retained him. He was not forced upon the defendant, nor did he seek to have the juror set aside when it was ascertained that there was a possibility of his being prejudiced against him. His simple suggestion to the court that he would agree to excuse the juror was not sufficient. If the juror was obnoxious to defendant, he should have moved at once, and promptly, to set him aside, if the legal grounds therefor existed. Willson's Crim. Stats. § 2293, for collated authorities. There was no bill of exceptions taken or reserved in this matter until after the trial of the cause and verdict returned into court."

So in Keaton v. State, 41 Tex. Cr. R. 621, 57 S. W. 1125, the same learned judge held, as to a juror who had a fixed opinion as to a material part of the state's case, as follows:

"While I believe the cause for challenge should have been sustained in regard to this juror, yet this was waived by appellant's refusal to exercise his peremptory challenge, which he could have done. When the cause for challenge was overruled, he accepted the juror without having exhausted his peremptory challenges. Thereafter there was no legally objectionable juror placed upon the jury. If appellant was not satisfied with the juror Warren, he should have exercised his peremptory challenge. Not having done so, he is in no position to complain."

We might multiply authorities, but the proposition seems sufficiently supported, that appellant having waived his right to challenge the juror Darelik, and having reserved no bill of exceptions at the time to his services as a juror, he cannot thereafter raise the same objection in the motion for new trial. Appellant insists that, regardless of his own attitude, the trial court should have stood him aside. The rule seems to be otherwise. In Greer v. State, 14 Tex. App. 179, it was said by Judge White that:

"A juror who is subject to challenge for any of the causes mentioned in the statute is not ipso facto absolutely incompetent as a juror, except in the cases mentioned in the third, fourth, and fifth subdivisions of article 636 [now article 692]. * * * As to disqualification for any of the other causes, no such inhibition exists in the law; and, as to such other causes, a defendant may waive them, and thereby make the juror competent, notwithstanding the existence of such cause."

[15] And this case was reversed and remanded because the trial court of his own motion excused certain jurors who had disqualified themselves for favor, whom the accused had not seen fit to challenge for such cause. Our conclusion as to the thirteenth

subdivision of article 692 is that its language is not intended to require the trial court to act independently of a challenge for cause by either party, but to accurately prescribe the test which shall be legally sufficient to sustain such challenge when made. Appellant urges the Jones Case, 52 Tex. Cr. R. 303, 106 S. W. 345, 124 Am. St. Rep. 1097, as sustaining his contention. The case was decided by 11 jurors. The constitutionality of said jury was raised for the first time in this court and the contention was upheld. The whole body of our law pertaining to felony trials, both statutory and constitutional, seems in harmony on the point that a jury must be composed of 12 men. We do not see the similarity of the Jones Case to that now before us; for our statute says in so many words that the accused may waive anything save a trial by jury. The Spear Case, 16 Tex. App. 98, is again urged as not in accord with our views. Appellant does not bring himself before us within the rules of diligence manifest in said case. A bill of exceptions was taken therein at the time of trial to the action of the lower court in excusing a juror who said he had an opinion which would influence his verdict, and this court upheld such action. The Spear Case, 16 Tex. App. 98, and the Rockhold Case, rendered at the same term of court, 16 Tex. App. 577, announce a doctrine in this regard which has never been cited with approval since, and which we think incompatible with the plain language and context of subdivision 13 of article 692, C. C. P., and the entire body of our law and the decisions of our own and other states. All of that part of said subdivision 13 which comes after the first three lines can only have reference to procedure after a challenge for cause, based on what is contained in said first three lines, has been made. Else, why say that the juror shall first be asked about the conclusion so established? No court takes it for granted before examination that a juror has a conclusion so established. No interrogator of a juror asks him first if his conclusion so established will influence his verdict; and yet the exact language of said subdivision following the first three lines thereof is as follows:

"For the purpose of ascertaining whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative he shall be discharged."

The literalist would compel the first question to a juror, when this part of his examination is reached, to be:

"Is it your opinion that your conclusions as to the guilt or innocence of the defendant so established will influence your verdict?"

This would be so manifestly wrong as to need no discussion. Rather would we apply the rule of construction which would uphold the law and make this ground one of challenge for cause as it is intended, and not one for peremptory challenge. We would hold that when in the course of his examination by either party a juror so far discloses that he has formed a conclusion which might influence his verdict as to elicit a challenge for that cause, the issue is thus joined, and is for the court, and for the purpose of ascertaining if the cause made the basis of such challenge exists, the court shall ask substantially if such conclusion so established will influence his verdict, and upon receiving an affirmative answer the challenge shall be sustained and the juror discharged; if the answer be negative, the issue still being joined, the court shall further conduct, or cause to be conducted, the examination, and may overrule the challenge and allow the juror, or may sustain it and discharge him. To hold it the duty of the trial court to act under subdivision 13, supra, without challenge would be for this court to strike from said article 692 said subdivision, and to write into our statutes a new ground of disqualification, and also a new ground for motion for new trial. This we decline to do.

Regarding the separation of the jury, we have again examined the facts, as well as our opinion relative to this matter. The juror who had separated from the others testified that when the court adjourned the people flocked out, jury and all, and that he got mixed up in the dark, couldn't tell one man from the other, and that he walked down the stairway, and the people who were with him went on to the street, and he knew then they were not the jury; that he walked to the corner of the courthouse, and that he met a man and asked him which way the jury went. This man was the district attorney, who told him to go at once to where the jury was. He at once returned to the head of the stairs and rejoined the jury. He testified that not a word was said to him about the case by any one, and that nothing else transpired, except what has been stated. No controversy of these facts appears in the record. We are still of the opinion that this was not such separation as to require reversal. We have always held that in such case, if the state satisfactorily met the presumption of injury from such separation by affirmative proof to the contrary, the mere fact of a short separation such as this would not constitute reversible error. In addition to the authorities formerly cited, see Jack v. State, 26 Tex. 1; Stewart v. State, 31 Tex. Cr. R. 154, 19 S. W. 908; Boyett v. State, 26 Tex. App. 703, 9 S. W. 275; Defriend v. State, 22 Tex. App. 570, 2 S. W. 641; Mauney v. State, 85 Tex. Cr. R. 184, 210 S. W. 963. We have again reviewed our opinion, together with the portion of the motion complaining of the action of the trial court in admitting evidence of gambling transactions and debts

between appellant and the deceased. These are material matters affecting appellant's motive for the homicide, and we are unable to conclude that any error appeared therein.

[16] The rejection of the statement of appellant's wife at some time subsequent to the shooting, which was offered in evidence, but not admitted, is again urged as ground for error. As far as is disclosed by allegations in the bill, appellant's wife was a bystander, not participating in the shooting, and it was not shown that the statement offered in evidence was made in the presence of appellant, nor how near same occurred in point of time to the shooting, nor does said statement appear to be more than the opinion of the wife. Statements of bystanders, made a minute after the shooting, have been rejected. Casey v. State, 50 Tex. Cr. R. 392, 97 S. W. 496. See, also, Wade v. State, 48 Tex. Cr. R. 513, 90 S. W. 506; Majors v. State, 58 Tex. Cr. R. 39, 124 S. W. 663; Parr v. State, 36 Tex. Cr. R. 493, 38 S. W. 180; Freeman v. State, 46 Tex. Cr. R. 320, 81 S. W. 953.

Being unable to agree with any of the contentions made by appellant in his motion for rehearing, same is overruled.